Good morning, ladies and gentlemen. This is the time for a hearing on Donk in the case of United States of America v. Novak. We understand counsel are all present and that Judge Kragerson is with us by video. I see him there. Good morning. Counsel for the appellate. May it please the Court, good morning. My name is Brent Whittlesey, and I'm appearing today on behalf of the government in this case. The issue that's presented to the Court of Appeals is that a criminal restitution judgment may be satisfied from assets that are contained in a criminal defendant's ERISA-qualified pension plan. There are three reasons why this Court should conclude that Congress intended that ERISA-qualified pension plans be subject to the enforcement of a criminal restitution judgment. I will list those three reasons and then explain each of them in greater detail. First, in Section 3613A of the Criminal Code, Congress stated that the list of exemptions that applies to the enforcement of a Federal criminal judgment is applicable notwithstanding any other provision of the Social Security Act or of any other Federal law. Second, in Section 3613C, Congress instructed that the list of the – that criminal judgments for restitution should be enforced in the same fashion as Federal tax judgments. And we know that Federal tax obligations may be satisfied from ERISA-qualified pension plan assets. Is this a lien? Pardon me? Is there a lien here? There is a lien, Your Honor, yes. And that's also created by Section 3613C. Third, Your Honors, in Section 3613C, Congress listed certain kinds of pensions that are exempt from execution to satisfy a Federal criminal debt. Congress could have included ERISA-qualified pension plan assets in that list of exempt property, but chose not to do so. Going back, then, to the first reason that I mentioned. If those three reasons tell us what Congress' intent was, why did Congress pass the law in 1997 saying that – amending ERISA to say that it's the conviction for a crime involving the plan that provides the exemption? Doesn't that say that only those convictions for only those crimes, restitution resulting from those crimes was excluded from other restitutions? In Section 1056d4, Your Honor, Congress did make an exception from the ERISA anti-alienation provisions for criminal judgments that pertain to crimes committed against the plan. And that was in response to the Supreme Court's decision in Guidry. We believe, Your Honor, that that does not implicate Section 3613a, because that provision, Section d4, applies to any criminal judgment. It could be entered in State court as a result of a crime against the plan, as well as a Federal criminal judgment. So Congress has done something different in Section 3613a. Do you mean that they excluded or made sure that only the enforcers led the restitution? The only ones who could be enforced were the ones involving the crime? No, I – The ones involved in the crime, that they wanted Federal restitution to come to all – all crimes? I think, Your Honor, Section – Okay. So only crimes involving the plan? I think, Your Honor, Section d4 applies to either a State or a Federal criminal restitution judgment for a crime committed against the plan. Section 3613a applies to any Federal criminal restitution judgment for – Were there explanations to Congress? We're looking under your theory to Congress's intent, that they intended victims of Federal crimes all to be able to get restitution, but victims of the same crimes in State courts not to get restitution? Unless it was a crime against the plan? No, Your Honor. I don't mean that. I mean that the d4 exemption from the anti-alienation provisions of ERISA would apply regardless of whether a criminal restitution judgment was entered in the State court or in the Federal court. That's all I can say. Hickory said that vis-a-vis ERISA, that if Congress wanted to carve out a specific exception, they should do it in any State of the language. And this was their response. Their response was to allow liens, et cetera, against ERISA's criminal violations. Does that suggest that they wanted to add others they could have? Your Honor, they did say in Guidry, of course, that there are no equitable exemptions to the anti-alienation provisions of ERISA. And we believe that Section 3613A is a statutory exception to the anti-alienation provisions of ERISA of the kind that the Supreme Court referred to in Guidry. I thought I heard you argue that the inclusion of ERISA crimes was in response to Guidry. In the statute that Judge Reinhart mentioned, which was Section d4 of the Federal Code of Section 1056. Responding to a Supreme Court decision that says if you want to create an exception to ERISA's anti-alienation provisions, you have to do it explicitly. And when they do it explicitly, they only carve out ERISA crimes. Is that right? Your Honor, we believe that — Have I stated anything wrong? No, sir. Nothing inaccurate in what I just stated? Sir, we believe that Section 3613A is another exception to the anti-alienation provisions of ERISA for the three reasons that I mentioned at the outset. For example, in Section 3613A, the Congress made certain kinds of pension benefits exempt from execution to satisfy criminal restitution judgments. And those are service-connected disability pensions for military veterans. Why do you suppose some of your amendments offer the amendment? Counsel, counsel, wasn't — didn't Congress just expressly consider and then reject an amendment to the statute that would have created an exemption to ERISA's anti-alienation provisions for restitution orders? I'm not aware of that, Your Honor. Does your argument with respect to 3613A relies in large part on how — what weight we give to the term, notwithstanding? Yes, Your Honor. And the language that's included in that provision of Section 3613A is very similar to the language that's included in the Internal Revenue Code, which was construed by this Court in the McIntyre case. But I guess the difficulty I have is if you take the word not — first, I think we are — we are all in agreement as to what the Supreme Court said, that we need some kind of clear intent. And then our charge, of course, is to figure out whether this falls in that category or not. My concern is that when we look at Nye Circuit and other cases that use the word notwithstanding, the courts rarely say that that satisfies a burden of clear intent. It's either not dispositive or it's only enforced if there's no other reasonable construction of the statute. So what I'm interested in is in light of that line of cases in the Nye Circuit, what support you have that would give the word notwithstanding the elevated presence of something in that order of clear intent? Yes, Your Honor. Your Honor, in Title 26, Section 6334c, that's the Internal Revenue Code, Congress said, notwithstanding any other law of the United States, including Section 207 of the Social Security Act, no other rights or property shall be exempt. And that language is quite similar to the language in Section 3613a that we rely on, which says, notwithstanding any other Federal law, including Section 207 of the Social Security Act. It's not quite as strong, would you say that? It's not quite as definitive. Well, I don't see any appreciable difference between the two. This one directly addresses the question of whether there are any other exceptions and the other one doesn't. That's true. One is in the affirmative and the other is in the negative. When was that? Are you familiar with Lockhart v. United States? It's a very recent decision. Yes, I am, Your Honor. And there it says it kind of grounds on the use of notwithstanding any other provision of statute as a basis for finding a specific exemption. There, the higher educational technical amendments sleuthingly eliminated limitations to certain lines of going after Social Security benefits, in our case, to pay, to offset against it was. Right. And they rejected the notwithstanding any other provision of statute language that found that there could be such an offset because the higher education because in 1996, another congressional enactment specifically said, often in reference to the Social Security Act, and said that that anti-alienation, alienation provision there would not apply. It's only because of a specific statute in action, not because of a prior statute that said notwithstanding any other provision. Judge Wardlaw, as we read Lockhart. Excuse me. Could I just interrupt for just a moment? Judge Pragerson, your rustling papers is too close to the microphone, and it can be heard all over the courtroom. If you could move the microphone away from the papers. The paper is away from you. Thank you. I'll have my technician do that. Judge Wardlaw, as we read Lockhart, there are two kinds of actions that Congress needs to take to amend statutes and make it clear that an exception applies. There are certain statutes, such as Section 207 of the Social Security Act, that have a so-called express reference provision in statutes. And they say, in so many words, this statute can't be amended except by another one that makes express reference to it. So Congress, when they mean to amend Section 207, has to say, we mean to amend Section 207. Other statutes that don't have an express reference provision, as we read Lockhart, can be amended by a subsequent statute that says, notwithstanding any other Federal law. The Supreme Court has spoken directly to that point, other than in Lockhart, you know, the point that the fact that an express requirement came into the statute. No. I don't know that the Supreme Court has, Your Honor, but this Court has in McIntyre. Essentially what you're saying is that the Guidry clear intent requirement is not an express requirement. It's not different from the 207 express statement requirement. Correct, Your Honor. And the difference is the difference between an intent expressed, sort of an ordinary statutory intent terms, and one that expressly addresses the question. Yes, that's true, Your Honor. Let me ask you, on what date was the notwithstanding language passed as part of the Internal Revenue Code? Well, if you don't know the precise date, what I'm trying to figure out is, was it passed prior to the adoption of ERISA? After the adoption of ERISA, I believe, Your Honor. I think it was before. Before. Was it? Okay. And ERISA is quite clear that it does not intend to interfere with the operation of preexisting law. So that I think the notwithstanding clause in the Internal Revenue Code occupies a very different position from the notwithstanding clause later on after Guidry, because at that point, the notwithstanding has to get around ERISA and has to get around Guidry. Whereas we're reading the notwithstanding clause in the Internal Revenue Code in light of ERISA's statement that we're not interfering with existing law. Yes, that may be so, Your Honor. But I would also note that in the Schanbaum case, which is cited in our brief in the Fifth Circuit, had determined that the notwithstanding clause in the Internal Revenue Code meant to supersede ERISA. And after the decision by the Fifth Circuit in the Schanbaum case, Congress amended Section 3613A to include the language that I've discussed, which is notwithstanding any other Federal law. Also, the savings clause in ERISA is not temporal, is it? In other words, I don't understand it to mean that it's only saving what was there before, it's saving a Federal statute, saving Federal statutes in general.  It subsequently enacted Federal statutes. Yes. If we were to – if the notwithstanding were determined to not be definitive, you were in some sort of equipoise, what about 3613C? I would appreciate your interpretation of how you view this restitution judgment becoming a lien and then being treated like a tax lien. Well, Your Honor, in the Wright v. Riften case, this Court has noted that ERISA benefits are not subject to the anti-alienation provision as soon as they're paid to the beneficiary. So we have a lien, the government has a lien for the benefit of victims of crime on the assets at the time that they're in the plan. And under the Riften case, we know that the government can execute on those benefits as soon as they're paid out. And so, really, the only thing we're talking about in this case is a timing issue of whether victims have to wait in order to obtain the value of that asset. Do they have to wait until an ERISA plan beneficiary becomes entitled to receive the assets and does, in fact, receive the assets? Well, one thing that confuses me is that this plan, as I understand it, is one in which the defendant had a right to get his money out now. But that's not true of many pension plans. Many pension plans are simply a contingent agreement to pay later, at a certain age, or to pay to dependents if that's so provided. So is your position that in the latter kind of a plan, that you have a right to get – somehow get access to this contingent money now? Yes, Your Honor. How do you do that? Pension plans don't operate that way. There's no value to the – in a traditional pension plan, as opposed to a 401k or profit sharing plan, as my understanding is, that there is no set-aside money for any individual, and it's only actuarially available to them, but it's not available to them at this point. Well, thinking more about Your Honor's question, it may certainly be that pension plans that have the kind of provision that Your Honor has mentioned would decline to pay, and properly so, until the beneficiary becomes actuarial – actuarially eligible to receive the money. At which point is actuarially available to entitled to monthly benefits? Maybe to a cash-out, but maybe not, depending on the risk and on the particular pension plan. So I don't see how you can get anything more than the individual is entitled to. Is that what you're saying? That is true. But in this case, the individual is entitled to the money. And we believe – There's been a lack of clarity about that in your briefs and in some of the opinions, it seems to me, because this is a particular – this is really more of an individual account kind of a plan, but many are not. Well, in this case, May Department Stores is the – is the operator of the plan. And they – they have never told us that Mr. Novak is not entitled to the money. To the contrary, we believe Mr. Novak is entitled to the money. He's also old enough, I guess, to cash out now, but many people are not without a penalty. What would you do with that? I don't know. I guess that would be the next case to come up. Could he apply for a cash out or a payout? No. We applied for a garnishment order. Now, you said that the only consequence of your position is that the government gets its money now instead of later. But what if it's a pension plan where the person who's been convicted of a crime and is subject to the restitution order dies before the distribution date and the pension now goes, according to the pension terms, to the surviving spouse? Well, at that point, I don't think the restitution order operates against the surviving spouse, does it? Your Honor, first of all, the government doesn't – doesn't get the money particularly. The government is simply collecting on behalf of victims of crime. Secondly, Your Honor, there's a provision in the criminal code that says restitution orders are no longer enforceable after the death of the person that's subject to the order. Yeah, that's the point of my question. That is to say, we're not only talking about waiting. We're talking about whether, because it may very well be that the person subject to the restitution order dies before the distribution date, in which case the money is never going to go to anybody other than the beneficiary under the plan. And Guidry quite clearly talks about the innocent parties who might be the beneficiaries of the plan and the desire of Congress to protect them and the desire, therefore, to make it very explicit in any congressional statement that they intend to get at it. Certainly, plan beneficiaries could be affected by a garnishment of benefits that are due and payable to the beneficiary. So your statement that the only consequence of your position is that it's now instead of later, that's not right. Well, Mr. Novak has the right to cash out his plan benefits. But you're arguing for a much broader principle. That is to say, your notwithstanding clause is not restricted to cash-out plans. That is true, Your Honor. We are arguing for that. Counsel, do we have to overrule Jackson in order for you to prevail? Your Honor, Jackson was a sentencing case. It came up at the time that the district court was fashioning orders for sentencing. And it's a very different situation than this case. If Jackson is read by this Court to mean simply that the district court lacks an equitable power at the time of sentencing to fashion the remedy that the district court did in Jackson, that that's an equitable power that's not available under Guidry, then there's no problem with Jackson. If Jackson is read to mean much more broadly that the United States and a crime victim can never access the money in an ERISA qualified pension plan, then we believe Jackson is contrary to federal law and should be corrected at this time. Counsel, the only case that I found from our sister circuits on whether the notwithstanding clause means restitution and fines trump ERISA anti-alienation is Irving from the Second Circuit, and that goes your way. Are there any others that have come down? Not that I know of on the circuit level, Your Honor. There's a variety of district court and magistrate court decisions that were affirmed by district judges around the country, and they all go your way. They go your way, but they're just district court, right? Yes. Irving is circuit, and that's the only one? Yes, Your Honor. And there is no case that we've located that holds that ERISA qualified pension plans may not be accessed by crime victims pursuant to Section 3613A. Are there any other – if we were to hold that this notwithstanding language is sufficient, are you aware of any other provisions of that, i.e., other statutes that would then be creating anti-alienation – exceptions to the ERISA anti-alienation provision, other than the tax statute in this one? Yes, Your Honor. I am aware of several. For example, in Title VII of Section 1509, there's a provision that says that crime insurance payments are not subject to attachment or garnishment. I presume that crop insurance payments would become subject to attachment or garnishment for a criminal restitution judgment. In Title 45, Section 231M, railroad retirement benefits are, again, not subject to attachment or garnishment. Isn't there an exception for railroad retirement in the tax code? I think there is one. There – I'm not aware of that, Your Honor. I think there is. But, again, this is an – an anti-attachment or garnishment statute that would be superseded by Federal criminal restitution judgments. The same is true under Title 38, Section 1970G, where payments under the service member's group life insurance are exempt from claims of creditors and are not subject to that. I was actually asking the opposite question, which is whether there are other notwithstanding clauses in other Federal statutes that would therefore lead to an exception to the ERISA provision. I'm not aware of that, Your Honor. Justice Kennedy, can I get you back to 29 U.S.C. Section 1056? This is the – I want to go back to D4. The order of requirement to pay arises under a judgment of conviction for crime involving such plan. Other than restitution, what might be covered under that section? Are we – are we concerned with fines to the United States? Yes, Your Honor, because Section 3613A also pertains to fines. Is there anything else other than fines to the United States? Special assessments of $200 per count. Okay. And are there other restitution provisions that might come into play here? Not that I'm aware of, Your Honor. Thank you. Unless there are other questions, I would conclude and ask to reserve my 10 minutes. Thank you. Let me ask you this question. Senator McCain, in February of 1996, introduced a bill that would have provided that Section 206D of ERISA be amended to state that the anti-alienation provision shall not apply to a qualified criminal restitution order. And that bill, that proposed bill, did not make it into the final version of the – of MVRA. Now, doesn't that tell us that Congress considered that question and rejected it? And that Congress specifically rejected the provision that would have applied to qualified criminal restitution orders under ERISA. Your Honor. The anti-alienation provision, of course, wouldn't have blocked that. Yes, Your Honor. Am I wrong when I say that? Your Honor, failed legislative enactments are generally not considered to be conclusive of anything. For example, I note that in the Supreme Court's opinion in Lockhart that Judge Wardlaw referred to a minute ago, the Court noted that it declined to read any meaning into the failed 2004 effort to amend the statute. Also, wouldn't it matter what the sequence was? It seemed to me that the non-withstanding language was not in there at the time, in December 1995. It only came in in Congress. So a non-withstanding language could have been exactly responsive to this concern. I don't think so, Your Honor. Yeah. But in this case of INS v. Cardozo-Fonseca, the Supreme Court stated, Your Honor, I'm not familiar with the INS case that you referred to on the record. I think that's a good point.    It's not a non-withstanding language. It's not a non-withstanding language. It's a non-withstanding phrase. All right. Thank you very much. Well, here's a citation. It's 480 U.S., and I'm looking at pages 442 and 443. Thank you, Your Honor. Thank you, counsel. You may reserve the rest of your time. You have about four minutes. Thank you. Thank you. May it please the Court, my name is Martin Baxt. I'm the attorney appearing on behalf of Raymond Novak, the appellee. Excuse me. I think we start with Guidry. Actually, we start with ERISA, but we start with Guidry in terms of the analysis. And in Guidry, our Supreme Court tells us that if exceptions are to be made, it's up to Congress, not the courts to make them. Guidry tells us that the identification of any exception should be left to Congress. And we know from Guidry that a clear directive from Congress is required to abrogate the anti-alienation provisions of ERISA. And I'll get to that in a second. The government contends that the MVRA is actually the result of the Guidry holding and that the MVRA is a specific collection statute. The appellee contends that the MVRA is not specific, it's not a clear directive, and falls short of the Guidry directive. Counsel? Yes. I have trouble with the idea that it's not clear. When two statutes say opposite things and one of them says notwithstanding any other statute, that seems to me like a fairly clear directive from Congress that the notwithstanding statute trumps the more general statute. They do that all the time. It's just a common way to write statutes. What's the matter with it? I think that if we look at the notwithstanding language in the context of Guidry, then what the notwithstanding language then basically dissolves the exceptions, two of which were discussed by Mr. Whittlesey. You've got exceptions with respect to ERISA for railroad retirement benefits. You have exception for workers' compensation benefits. You have exception for Medal of Honor winners. You have exception for individuals who the crop insurance. If we read the notwithstanding language, then all of that goes away. In essence, the ---- Sotomayor, the property exempt from tax levy from levy for taxes, that's an exception to the notwithstanding language. But the levy for taxes only refers to Federal taxes. It doesn't refer to State taxes. And the Ninth Circuit has held that back in 1990, that State taxes are as well. There's a substantial question about whether the notwithstanding any other Federal exemption law means that applies to State exemptions as well. That's ---- that I think is true, because the sentence before it says, under Federal law or State law. So I don't know whether the notwithstanding language applies to State exemptions, but it certainly seems to apply to Federal exemptions. But in looking at it, it would appear that it applies to everything, that when you say notwithstanding any Federal law, in essence, what the MVRA is doing is it is basically saying that the exemptions in ERISA fall. There are the rule that the MVRA swallows the exceptions in ERISA. Couldn't Congress do that? I mean, Congress could do that if it did so clearly. You can see that, right? Congress can do that, but according to Guidry, it has to do it by a clear statement. Well, why is it that the Supreme Court said that it has to be a clear statement? Not because of some ---- something unique in ERISA, but because it said in the Guidry case, you didn't have a congressional enactment of any kind on one side that could be argued to be a specific enactment. You had the general notion that Federal labor law somehow ought to permit a constructive trust, a very general against the specific. Is there anything more than that that Guidry is talking about that requires a clear statement? I don't think that Guidry is talking about anything more than that. I think that when the charge is made to Congress that Congress needs to do something more than create a general statute, I think ---- Well, what makes this a general statute? I mean, it does say notwithstanding anything else, and it does make an explicit analogy to what the tax collectors can do. I believe that Guidry requires a specific articulation of the ---- of the exceptions that have to fall. Why? Because ---- well, I ---- it's my interpretation of what Guidry says. I think that if the MVRA simply said, if you're convicted of a crime, your pension benefits can be taken to satisfy restitution, that's a specific statement. ERISA isn't even mentioned in the MVRA. It's not even mentioned in the history. It's not only the notwithstanding language. It's notwithstanding, and then there's an affirmative statement. A judgment imposing a fine may be enforced against all property or rights to property. That's the affirmative statement. And that seems quite definite. It says anything. So why isn't anything ---- anything that isn't accepted? Well, again, I don't want to keep going back to the concept of a specific articulated statement, but I believe that's what Guidry tells you. And then it also says including section 207. 207 is not an exception. It's an including. We know why 207 is in there, which is it specifically requires something expressed. But it's an anti-alienation provision. And doesn't that suggest that anti-alienation provisions in general are included? I don't ---- no, I don't believe it can. I think, again, it's ---- I think we're dealing with a general statement that swallows up the specific rule. How is this any more general than the statement in the ERISA? ERISA doesn't make specific reference to the victim predecessor statute or the later statute, either the Witness and Victim Protection Act or the Mandatory Victim Restitution Act. Those aren't referred to in ERISA. It seems to me that calling one specific and the other general kind of misses the point, because neither one refers to the other. And we're left trying to figure out which one trumps. But I don't see anything in the ERISA provision or in Guidry that says that it's more specific than the statute here. ERISA preceded Guidry initially. It was amended, I believe, in 97, but it preceded Guidry. I ---- if Guidry is interpreting ERISA, then I think we need to start with Guidry. If the ---- But all Guidry says, and I thought we'd established this before, all Guidry says is a very general reference in the Federal labor law used by a court to impose a constructive trust, that's too general. That doesn't trump a specific statute. But it seems to me that the statute we have here is a specific statute, or at least as specific as ERISA is, so why aren't they treated on the same level? I ---- well, again, and my argument goes back to Guidry, and I apologize. I believe that the MVRA, in failing to mention ERISA, in failing to deal with the exceptions that are set forth in ERISA, well, the specific ---- any exceptions that are set forth in ERISA, doesn't meet the Guidry Guideline. Counsel, let's go back to Guidry for a minute, the specific language in it. It is an elementary tenet of statutory construction that where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one. We do not believe that congressional intent would be effectuated by reading the LMRDA's general reference to other appropriate relief as overriding an express specific congressional directive that pension benefits not be subject to assignment or alienation. Now, building on what Judge Clifton just asked you, it looks to me as though Congress responded here with a specific statute about which trumps which. And Guidry does not say that there's some super status to the ERISA anti-alienation provision. It's not like abrogation under the 14th Amendment where you need an especially high degree of clarity. It's just two statutes of equal force that might be hard to reconcile if they didn't give you language telling you which trumps which. I have problems seeing how Guidry actually helps you. It's up to Congress to make the distinction. The courts certainly do. There's a traditional way to do it, which they seem to have done. And that's how the Second Circuit and all the district courts have read it. Is there any sister circuit that's read it your way? No. There is no sister circuit that has read it my way, but I don't believe there is any sister circuit, including in the Second Circuit in Irving, that has read it the other way. Irving refers to taxes owing to the government. It doesn't refer to restitution. The question I was going to ask you, do you agree that under the statute, the restitution order is treated the same as if it were an order for the collection of taxes? I do not, because that doesn't go all the way. It certainly would if it's to be treated the same way as collection of Federal taxes. But State taxes are. All right, take Federal taxes. Do you agree that the restitution order is to be treated the same way as if it were a Federal tax order? That's what the courts have told us. Then what do you do with our case that says that a Federal tax order may be attached and may be enforced? Do we have to overrule McIntyre? No. It doesn't say a Federal tax order, though. It just says a tax order, and that's where there is an ambiguity, because some tax orders cannot be reached. Well, the pension cannot be reached for restitution of, let's say, for example, State taxes. The fact that McIntyre, leaving aside any cross-references, the fact is that McIntyre or does McIntyre hang on similar notwithstanding language, such that we, if we don't overrule McIntyre, then we have to accept the fact that this notwithstanding language has the force the government argues for it. I didn't read McIntyre with the idea that the notwithstanding language controlled with respect to McIntyre, and I apologize, but that was not my reading of McIntyre. Would you be more precise, because if you look at 3613a, it talks about enforcement, and that's where the notwithstanding language is. It then talks, let's see, about how the judgment is treated as a lien as if it were under the tax laws, which could, in fact, be, if you bring that out, the case law, could be enforced against ERISA benefit. What, in your view, is the relationship between A and C? I believe that, well, if it is a fund from which we could take the money, again,  I don't believe that meets the criteria of a definite statement. I have no idea what you just said. Isn't C just all about, you know, a tax lien that sort of like has super priority? Federal tax lien. Federal tax lien does. Isn't C just recognizing that a restitution lien essentially gets priority over all other liens to the same extent as a tax lien? I think if it does, then we're faced with this social policy argument that what we're doing is putting the rights of, in this particular case, of multinational corporation, but I don't think we need to distinguish between corporations and individuals. We're putting the rights of an individual over the rights of a State taxing authority, which arguably represents all of the citizens of the State. Well, doesn't it just see just mean that the lien can be, that the restitution lien or fine lien can be enforced in the manner that a tax lien is enforced? Yes, it does. The procedural aspect. Procedurally, yes, but not necessarily against an arreast of pension. Well, that gets back to the question of whether we need to, what do we do with McIntyre? How do you treat McIntyre in this, as Jake Reinhart asked? I think, well, I don't think that we need to overrule McIntyre. I don't think that the ---- And how would you square McIntyre with Jackson? I don't think that McIntyre and Jackson are dealing with the, with the, with the ---- Jackson is dealing specifically with the pension, well, with the cashing out of a pension plan, an immediate payment of a pension plan. McIntyre does not deal with that. So I don't think that the two ---- I understand. This plan is a plan that, as I understand, allows an immediate cash out. It seems to be an individual account plan, and Mr. Novak himself could go and get all that money now. Is that right? I don't know that to be true. I know that Mr. Novak has not reached retirement age, and I do not know whether he ---- About 59 and a half? I don't believe he is. But it was 59 at the time of the ---- He may be. I don't know. I know he's younger than I am. But if he was born in 47. If he was born in 47, he's right there. Okay. I don't know whether ---- well, certainly, but for the lien, I don't know whether he could take the money now. And I'd be happy to. The documents seem to suggest that. To say that he could get the home ---- he just has to apply and he could get all the money. I don't know why that is, but it appears to be saying that. If that's the assumption that we make, then perhaps, yes, he could get the money. And if he did take the money, that money would be subject to seizure. The government is ---- But you were trying to draw a distinction between a cash-out situation and a non-cash-out situation. I'm not understanding it, because this is a situation where, as I understand it, the money is available for immediate cash-out. Which is not true of a lot of pensions, but it seems to be true here. I honestly don't know whether that money is ---- would be ---- but for this case, I don't know whether the money would be available. But what distinction were you just drawing? You were earlier drawing a distinction with the earlier case saying it's different because it was a cash-out situation. I don't ---- I don't believe that was my ---- I don't know. If I understand your position correctly, then in the type of plan where the employee does have the power to cash out, to take his money, he can ---- a criminal employee can avoid paying restitution to the victim of his crime by choosing to leave his money in rather than choosing to take it out, right? If ---- and it's not my argument, but it's certainly logical that if that were the case, then an employee would simply leave the money in and avoid having to pay restitution. So I agree with that particular concept. I don't know that that's the ---- that's what's happening here. But I think that if that is something that could happen, then it's up to Congress to deal with that in a specific statute. But why would Congress mean to do that, even when it says, notwithstanding other laws, crime victims come first? Because I believe that the notwithstanding language is not specific and does not meet ---- and I realize we've ---- I've said it before. But what about the language that comes after the notwithstanding? What about the next language that says that all property and all rights to property are subject to payment? The next sentence, the next ---- the affirmative phrase in that sentence. But then that still runs afoul of the anti-alienation provisions in ERISA. Yeah. Counsel, you don't know what we said here. This is Judge Prager, so I just ---- I want to ask you the same question I asked counsel for the government. I mean, were you aware that Senator McCain put in a bill that provided that Section 206D of ERISA be amended to state that the anti-alienation provision shall not apply to a qualified criminal restitution order, and that that bill didn't make it into the final version of the Act? In other words, that approach was rejected. Are you aware of that? I am not. Not until it was just mentioned by your Honor. So I don't know why that ---- if we're considering congressional intent and Congress rejected that provision that would have exempted the ---- that would have allowed a restitution order to be collected on an ERISA plan, why doesn't ---- I mean, that tells us what Congress's intent was. I don't know why we need to go through all these ---- all this puzzling legislation. You weren't aware of that? I was not aware. Senator McCain, that ---- well, I can ---- you can get it at 142 Congressional Record S1276-07, Daily Edition, February 20, 1996. He put that in, Senator McCain did, and it was turned down. And why that is pretty conclusive as to what Congress's intent was, I don't know. Instead of having to go through all these puzzling approaches that we're taking that are stimulating, but I don't think answer the question. Counsel, would you agree that a ruling in your client's favor would create a perfect split? With regard to McIntosh? Well, no, not with regard to the Second Circuit. Irving? No, because I believe Irving deals specifically with taxes and specifically with taxes or with money owing to the government as opposed to a private litigant or a victim in this case. Counsel, may I ask you the following? Assuming that I were to agree with the government that notwithstanding any other Federal law is sufficiently specific to take into account the anti-alienation provision of ERISA, and I'm just trying to figure out, okay, what does it mean, notwithstanding any other Federal law, a judgment imposing a fine may not be enforced against all property or rights to property of the person fined. Now, the problem that worries me here is that we've got various kinds of pensions. Some of them are specific to the particular individual who's been convicted of the crime and who is subject to restitution order, and indeed, within that category, sometimes they can get the money right now if they simply ask for it. Other ERISA pensions, however, are contingent upon various things and indeed may never come to the person who has been convicted of the fine if, for example, that person predeceases the distribution date under the pension. It may end up going, by virtue of the pension agreement, to the surviving spouse. Is it possible to read property or rights to property to allow execution as against someone who has an undisputed right to a property, but to protect it if it's a contingent right? I'm trying to figure out if there's some workable way to take into consideration the various factual situations we're going to come into and that the Court references in Guidry in terms of what Congress seems to have had in mind about various innocent people who are potentially beneficiaries of the plan. I think that the Lazarowitz or Lezarowitz case attempted to do that because that dealt with, well, dealt with restitution in favor of the United States and held that that's to be treated the same as tax liabilities. But in fact, it was as recently cited by the government, the right versus Rivland right out of our circuit dealt with distributed versus undistributed money. And the Ninth Circuit held that if the money is being distributed or is being assigned, you can take it. But what about if it is immediately distributable, but hasn't been distributed? In other words, I owe you tomorrow $1,000 for the month of such and such. I understand. And there is some benefit, which is I assume why people fight over this, to getting it before rather than after it's transferred, mainly because after it's transferred it may be harder to trace and so on. So does it matter in terms of – because I had a similar concern or interest. What does right property or right to property mean? It doesn't mean something that's – if it's immediately distributable, is it therefore a right to property, but not if it's only contingently distributable? I don't believe that any district has addressed that particular issue as of yet. But don't we have to have it in mind in order to decide this case, to know what it means to have a right to any property or right to property? We have to have it in mind if we believe that Congress had it in mind with respect to the MVRA. I've not yet – Since this is a writ of garnishment, doesn't this depend on how the garnished defendant answers the writ? It depends on what the garnished defendant says he or she is holding for the debtor. Assuming what we're doing is determining whether the person has a present right to the money, but just simply refuses not to do it. Right. If the plain answer is that they have no present right to the money, then that's the answer to the writ of garnishment in that case. I agree with that. In Gietry, they were trying to get money to which there was a present right, as I understand it. What they were trying to do was go in and get from the – actually, it was an offset is what they were trying to get, as the money became due, is my understanding. They weren't trying to accelerate the payment due, but as the money became due, they were trying to get it for themselves. Yes. I believe in Gietry there was a judgment in favor of the – There was a judgment, but the nature of the constructive trust, as I understand it, is as the money became due, pay it to us instead of him, rather than accelerate what was due. I believe that's the case. Do you know if your client can withdraw the money without penalty? I don't. So let's assume that he – let's play this out for a minute, because I think that may bear on the case. The government exercises his right, garnishes his right to withdraw the money, takes the money. Normally, that would be subject to a 10 percent penalty, and that would be taxed. Do you – is your client responsible for that? That's an interesting point, whether an involuntary distribution creates a tax on the initial beneficiary of the plan. I don't know. Any reason to think the answer would be different than the answer in a tax collection case? If money is taken out of a pension account for tax collection, presumably it has whatever tax impact it has. Would this case be any different? I don't think it would be different. I – it's an involuntary distribution. I don't think it would be any different from any tax collection case. Is there an answer to that question? Because I was wondering about it as well. In the tax cases? If there is, I don't know the answer. What ultimately is your response on McIntyre, just to go back to that? I think that we got sidetracked on it, but what is – what possible difference is there between McIntyre and this case? I understand one's about taxes and the other one isn't, but aside from that, conceptually in the way the statutes are structured, what's the difference? I think if we exclude the one's about taxes and one isn't, then there is no difference of any. So how could we – I mean, if the statutes are written in the same way, how could it matter to us whether one's about taxes and one isn't? Because the – well, again, the issue is who is getting the money, and I believe that there is – taxes have always been an exception to the anti-alienation provision. Taxes owing to the government of other countries. Yes, but they now took the same language they used in taxes, and they used it here. Doesn't that signal that they want this to be the same thing? But if they wanted it, they should have said it. I think that's what Guidry tells us. But they didn't say it was with respect to taxes any more than they said it here. They said nothing clearer with regard to taxes. It's at the same level of clarity. Is that true? Yes. The May Department's response to the levy doesn't state whether or not the benefits were payable immediately. That's correct. It does not. All it says is that they were vested. Yes. So does that mean – you don't know whether or not he could just apply for benefits now? I don't believe that the concept of vesting is the same as the concept of the ability to withdraw the money. Pension benefits vest all the time. Right. But could he apply for the benefits today? I honestly don't know. My suspicion is that he probably could, but for the lien. But I don't know, and that's just a suspicion. And isn't there a – in the record, there's a answer of Garnes-Shea which says that in accordance with the terms of the plan, debtor is entitled to receive distribution of his benefits in the May Department Store and his accounts in the May Department Store's profit-sharing plan. To receive payment of benefits, he must complete and submit an application of payment of benefits. I took that to mean that he could get the benefits, subject to these problems about the 10 percent discount on the taxes, which I'm also curious about. But leaving that aside, it appears that he could simply apply and get the money. Is that what this says here? Yes, I've read that, and it certainly seems to say that. And again, I don't know about the tax-adopted ones. Thank you. Thank you. I'd like to go back for just a minute to the level of clarity of the notwithstanding any other Federal law provision. If that provision were found by the courts not to be sufficiently clear to override the ERISA anti-alienation provisions, it would, in effect, require Congress to put in a laundry list of statutes every time it wants to amend a statute. So Congress would have to say in Section 3613a, notwithstanding ERISA, notwithstanding the crop insurance statute, notwithstanding the veteran statute. Well, but, no, that's not true. This clear statement rule comes out of Guidry, and it's specifically applicable to ERISA. And we don't know that with respect to the other statutes you're referring to. If the Court believes that Guidry establishes some other level of clarity for amendment of ERISA than applies to other Federal statutes, then I agree with Your Honor.  we have a whole series of cases in which we don't know that the statement that we repeatedly held that the phrase notwithstanding any other law is not always construed literally. And then we have a whole series of cases in which we don't construe it the way it would seem to be understood by most people. I don't know when we say we don't always do it. We don't say when we do and when we don't. But certainly it's not unusual to say that that phrase doesn't mean literally what it says, at least in this circuit. Well, Your Honor, in this circuit, in the McIntyre case, it seems to have meant exactly what it says, and it seems to have applied to ERISA. And in others it doesn't. And how do we tell when? I don't have an answer to that, Your Honor. Let me come back to a different version of Guidry when it's talking about people who may be innocent, who may be beneficiaries of the pension plan. Even if someone has an immediate right to a pension, as to say an immediate right to a payout, I think it will often be the case that that is, for example, in California, if the work was done in California, community property. But your position is despite the fact that it's community property, you get all of it? Yes, Your Honor. I'm glad you brought that up because I meant to discuss it. All the enforcement actions that the United States takes on behalf of criminal victims have implications for third parties in virtually every case. The Supreme Court thinks that Congress and ERISA is trying to pay attention not only to the wage earner, but to all of those who might be beneficiaries under the pension plan, and many of whom are going to be innocent. Every time, as I mentioned, Your Honor, every time we take an enforcement action, we affect spouses, we affect heirs, we affect all kinds of people who thought that they had a property interest in property that the government is taking. And I don't see any other way to do it. But we don't – in most of those cases, we don't have a congressional intent statement that the purpose of that property was to protect not only in this case the pension holder, but the beneficiary. So if the government enforces a levy against somebody's automobile or even their house or their business, they don't have the same statutory protection as pension plans, do they? That is true, Your Honor. However, the crop insurance payment statute, presumably, the veterans' disability pension statute, the railroad retirement benefit statute, those are all intended, I would submit, by Congress to benefit not only the actual beneficiary, but also dependents. Thank you very much for your attention. Thank you, Mr. Chief Justice. The argument is submitted for decision, and the Court stands adjourned.
judges: Schroeder, Pregerson, Reinhardt, Kleinfeld, Hawkins, Thomas, Silverman, McKeown, Wardlaw, W.fletcher, Paez, Berzon, Rawlinson, Clifton, Bybee